AF Approval _____       Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO.

MICHAEL FREY, M.D.

2:18-cr-71-FtM-99CM

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, MICHAEL FREY, M.D., and the attorney for the

defendant, Ryan Stumphauzer, mutually agree as follows:

A.  **Particularized Terms**

1.  Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and

Two of the Information. Each of Counts One and Two charges the defendant

with conspiracy to receive healthcare kickbacks, in violation of 18 U.S.C.

§ 371.

2.  Maximum Penalties

Each of Counts One and Two carries a maximum sentence of

five years' imprisonment, a fine of up to $250,000, a term of supervised release

_____ Defendant's
        initials

@ 1

of not more than three years, and a special assessment of $100. With respect to
certain offenses, the Court shall order the defendant to make restitution to any
victim of the offense(s), and with respect to other offenses, the Court may
order the defendant to make restitution to any victim of the offense(s), or to
the community, as set forth below.

    3.   Elements of the Offense(s)

        The defendant acknowledges understanding the nature and
elements of the offense(s) with which defendant has been charged and to
which defendant is pleading guilty. The elements of each of Counts One and
Two are:

| | |
|---|---|
| First: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | the defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and |
| Fourth: | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

    4.   Indictment Waiver

        Defendant will waive the right to be charged by way of
indictment before a federal grand jury.

Defendant's Initials _____       2

5. __No Further Charges__

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, which arise out of the facts described herein, or relating to:

     a.    payments he received to be a medical advisor at Doctor's Choice, Inc.;

     b.    his referrals to Tropic Pharmacy;

     c.    overutilization of urine drug testing at the Medical Practice;

     d.    kickbacks relating to his ownership of Anesthesia Partners, and

     e.    overbilling as a result of the performance of "block-leasing" at Park Center for Procedures, LLC.

6. __Mandatory Restitution to Victim of Offense of Conviction__

Pursuant to 18 U.S.C. § 3663A, defendant agrees to make full restitution in the amount of $472,112.88, to be paid jointly and severally with his co-conspirators.

7. __Guidelines Sentence__

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the

Defendant's Initials _____

3

defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of

Defendant's Initials _____   4

responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.  Adjusted Offense Level - Estimate Only

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will not oppose the defendant's request to the Court that the defendant's adjusted offense level be calculated at 23, as determined below:

Defendant's Initials _____                    5

| Guideline | Description | Levels |
|---|---|---|
| USSG § 2B4.1(a) | Base Offense | 8 |
| USSG § 2B4.1(b)(1)(b) | Specific Offense Characteristic: Value of Improper Benefit Conferred | 16 |
| USSG § 2X1.1 | Cross Reference | 0 |
| USSG § 3B1.3 | Role in the Offense: Abuse of Position of Trust | 2 |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| Total Adjusted Offense Level | | 23 |

The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

11.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the

Defendant's Initials _____   6

United States may require. If the cooperation is completed prior to sentencing,

the government agrees to consider whether such cooperation qualifies as

"substantial assistance" in accordance with the policy of the United States

Attorney for the Middle District of Florida, warranting the filing of a motion

at the time of sentencing recommending (1) a downward departure from the

applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of

a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. §

3553(e), or (3) both. If the cooperation is completed subsequent to sentencing,

the government agrees to consider whether such cooperation qualifies as

"substantial assistance" in accordance with the policy of the United States

Attorney for the Middle District of Florida, warranting the filing of a motion

for a reduction of sentence within one year of the imposition of sentence

pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands

that the determination as to whether "substantial assistance" has been

provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____                    7

12.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

13.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials _____                        8

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by

Defendant's Initials _____

9

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)   The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)   The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)   The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10

Defendant's Initials _____

14.  **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, $472,112.88, which represents the amount of proceeds personally obtained by the defendant as a result of the offenses charged in Counts One and Two. The defendant acknowledges and agrees that: (1) the defendant personally obtained $472,112.88 in proceeds as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have otherwise been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.

The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials _____   11

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the $472,112.88 sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The United States and the defendant further agree that the order of forfeiture will be satisfied by the defendant's voluntary payment of $472,112.88. The United States agrees not pursue the forfeiture of substitute assets to satisfy the forfeiture provided the defendant pays the full sum of $472,112.88 in the time specified by Paragraph A.15. In the event that he does not pay this sum in the time specified, however, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, directly or indirectly, as the result of the offense of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense. The defendant agrees that

Defendant's Initials _____

12

forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant further agrees that the United States is seeking an order of forfeiture for the amount of the proceeds of his crime because, as a result of his actions, the actual criminal proceeds cannot be located despite the exercise of due diligence. If he does not make the voluntary payment of forfeiture as specified in Paragraph A.15, the defendant further agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant also agrees to be interviewed by the government, prior to and after sentencing, regarding such assets, and to be polygraphed on the issue of assets, if it is deemed necessary

Defendant's Initials _____    13

by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

If he does not make the voluntary payment of forfeiture as specified in Paragraph A.15, the defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant,

Defendant's Initials _____        14

notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

15.   Payment of Forfeiture and Restitution

Within thirty days of signing this plea agreement, the defendant agrees to fully satisfy his forfeiture and restitution obligations. The defendant agrees to deliver a certified check in the amount of $472,112.88, payable to the "United States Marshals Service," to the United States to satisfy his forfeiture obligation. Additionally, the defendant agrees to deliver a second certified check to the Clerk of the Court in the amount of $226,112.88, payable to "Clerk, U.S. District Court," toward his restitution obligation.

B.   Standard Terms and Conditions

1.   Restitution, Special Assessment and Fine.

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

Defendant's Initials

15

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $200.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.   <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release

Defendant's Initials _____   16

upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _____

17

5.    Financial Disclosures

The following financial disclosure obligations shall apply only if the defendant fails to satisfy his restitution and forfeiture obligations at the time specified in paragraph A.15. Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of his adjudication of guilt an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and

Defendant's Initials /////              18

for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    6.    <u>Sentencing Recommendations</u>

    It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials ⟍⟋⟍⟋    19

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials _____                                    20

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials _____

21

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

The defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____                22

## FACTS

The defendant, MICHAEL FREY, M.D., was the shareholder and director of the "Medical Clinic," a Florida for-profit corporation established in 2001, which operated in Fort Myers, Florida. The Medical Clinic's business involved offering services in the field of pain management. Among other services, the defendant would at times provide durable medical equipment, pain medication, and pain creams to his pain management patients at the Medical Clinic.

### Count One

The defendant had a working relationship with individuals referred to herein as Co-conspirators #1 and #2. Co-conspirators #1 and #2 were owners and managing members of the "Medical Equipment Provider," a Florida limited liability company established in 2006, which operated in Fort Myers, Florida. The Medical Equipment Provider's purported business was as a TRICARE- and Medicare-authorized supplier of durable medical equipment, including transcutaneous electrical nerve stimulation units, knee braces, back braces, and other orthotics.

The defendant told Co-conspirators #1 and #2 that he would give them $50,000 if, in exchange, they would place his wife on the Medical Equipment Provider's payroll and pay her 10% of the profit of all of the Medical

Defendant's Initials _____

23

Equipment Provider durable medical equipment that the Medical Clinic thereafter referred to its patients. The parties agreed to this arrangement and, on March 5, 2010, the defendant paid Co-conspirator #1 $25,000 via check number 1604, drawn on the defendant's Northern Trust account ending in 3768. The defendant also paid Co-conspirator #2 $25,000 via check number 1605, drawn on the defendant's Northern Trust account ending in 3768.

The Medical Equipment Provider used a system called Empower123 to track all of the durable medical equipment referrals by the Medical Clinic. Every two weeks, from approximately March 5, 2010, until approximately May 19, 2016, Co-conspirator #1 tracked durable medical equipment referrals from the Medical Clinic, calculated the amount owed to the defendant, and issued a check in the name of the defendant's wife, which was intended for the defendant. The defendant's wife never worked for the Medical Equipment Provider and never visited its office. Co-conspirator #1 delivered the checks directly to the defendant, even though they were made out to the defendant's wife. The defendant deposited these checks into an account bearing both his and his wife's names.

On or about the dates set forth below, the defendant received the following kickbacks from Co-conspirators #1 and #2, paid in the manner described:

Defendant's Initials _____                    24

| PAYMENT DATE | PAYMENT AMOUNT | METHOD OF KICKBACK |
|---|---|---|
| 5/10/2010 | $1,950 | Via check # 1446 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 4/15/2011 | $2,300 | Via check # 5041 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 2/1/2012 | $3,726 | Via check # 5447 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 4/1/2013 | $3,200 | Via check # 6846 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 8/1/2014 | $4,100 | Via check # 8398 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 8/1/2015 | $3,041 | Via check # 8874 from Medical Equipment Provider's Bank of America account ending in 6548. |
| 5/20/2016 | $2,094 | Via direct deposit to the defendant's FineMark National account ending in 0224. |

The durable medical equipment referrals from the Medical Clinic made up approximately 50% of Medical Equipment Provider's overall business. The defendant admits and agrees that the kickbacks paid to him by Co-conspirators

Defendant's Initials

25

#1 and #2 were intended to incentivize and did in fact incentivize his referral activity.

The Medical Equipment Provider sought insurance reimbursement for each durable medical equipment referral from the Medical Clinic (which referrals were induced by unlawful kickbacks) from private insurers as well as Medicare Part B and TRICARE. Indeed, the purpose of the arrangement was to pay the defendant a bribe for the purpose of securing the benefit of insurance reimbursement money. During the course of this kickback conspiracy, the Medical Equipment Provider received reimbursement from Medicare Part B in the amount of $784,094.81. The Medical Equipment Provider further received reimbursement from TRICARE in the amount of $18,912.44. Thus the improper benefit conferred on Co-conspirators #1 and #2 for the payment of the bribe was $803,007.25.

Count Two

A Florida for-profit corporation referred to herein as the "Pharmacy" was established in 2010, and operated in Stuart, Florida. The Pharmacy provided a full range of pharmaceutical medications and compounding services, as well as comprehensive pharmaceutical consultations and care, for healthcare and veterinary medicine. In 2013, the Pharmacy hired Co-conspirator #1 as an independent sales representative. As a sales

Defendant's Initials _____                    26

representative, Co-conspirator #1 received a commission from the Pharmacy for each pain cream prescribed by his marketed doctors, which was filled by the Pharmacy.

Co-conspirator #1 approached the defendant about prescribing pain creams to his patients. The defendant and Co-conspirator #1 agreed that Co-conspirator #1 would provide the defendant a portion of each of the commissions that the Pharmacy paid to Co-conspirator #1 for the defendant's prescriptions. Co-conspirator #1 paid bribes to the defendant for the purpose of obtaining the benefit of commissions from the Pharmacy. The defendant admits and agrees that the bribes paid to him by Co-conspirator #1 were intended to incentivize and did in fact incentivize his compounded pharmaceutical cream prescriptions.

From approximately April 2013, through at least April 2015, Co-conspirator #1 calculated the amount of commissions he received from the defendant's prescriptions, determined the amount owed to the defendant, and then withdrew the cash equivalent from his personal bank account. Co-conspirator #1 then delivered the cash in an envelope to the defendant at his office at the Medical Clinic. The defendant received between $1,000 to $20,000 each month from Co-conspirator #1 pursuant to this scheme.

Defendant's Initials

27

For example, on or about the dates set forth below, the defendant

received the following kickbacks from Co-conspirator #1 in the manner

described:

| PAYMENT DATE | PAYMENT AMOUNT | METHOD OF KICKBACK PAYMENT |
|---|---|---|
| 4/30/2013 | $1,600 | Cash payment, withdrawn from Co-conspirator #1's Suncoast Credit Union account ending in 0836 |
| 11/13/2013 | $10,000 | Cash payment, withdrawn from Co-conspirator #1's Suncoast Credit Union account ending in 0836 |
| 8/21/2014 | $5,000 | Cash payment, withdrawn from Co-conspirator #1's Suncoast Credit Union account ending in 0836 |

As a result of the unlawful agreement to receive kickbacks, on or about

the dates set forth below, the defendant prescribed compounded

pharmaceuticals, to be filled by the Pharmacy:

| DATE OF PRESCRIPTION | PATIENT | TRICARE REIMBURSEMENT AMOUNT |
|---|---|---|
| 5/2/2013 | D.J. | $3,564.63 |
| 11/4/2013 | J.C. | $4,842.75 |

Defendant's Initials _____      28

| DATE OF PRESCRIPTION | PATIENT | TRICARE REIMBURSEMENT AMOUNT |
|---|---|---|
| 11/7/2013 | E.B. | $4,842.75 |
| 7/30/2014 | R.G. | $5,086.72 |
| 4/20/2015 | W.J.B. | $7,673.84 |

The Pharmacy sought insurance reimbursement for each compounded pharmaceutical prescription written by the defendant from TRICARE. The Pharmacy in turn paid Co-conspirator #1 commissions on each of the prescriptions that Co-conspirator #1 obtained from the defendant as a result of the bribes that Co-conspirator #1 paid him. In total, the improper benefit conferred on Co-conspirator #1 as a result of the bribes he paid the defendant, amounted to $945,915.89.

The defendant received kickbacks from the schemes described in Counts One and Two totaling $472,112.88.

<u>Insys Therapeutics Incorporated</u>

From approximately September 2013 through September 2015, the defendant conspired with sales representatives and other Insys Therapeutics Incorporated employees to receive kickbacks in the form of fees paid to the

Defendant's Initials _____

29

defendant in connection with his participation in largely bogus Insys speaker event programs. These kickbacks induced the defendant to write prescriptions for pharmaceuticals manufactured by Insys, including their prescription fentanyl spray, to opioid-tolerant patients experiencing pain.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

Defendant's Initials

30

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

    13.   Certification

    The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _29_ day of March, 2018.

MARIA CHAPA LOPEZ
United States Attorney

Michael Frey, M.D.
Defendant

Rachel K. Jones
Assistant United States Attorney

Ryan Stumphauzer
Attorney for Defendant

Simon R. Eth
Assistant United States Attorney

Jesus M. Casas
Assistant United States Attorney
Chief, Ft. Myers Division